IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

HERRING BANK, TRUSTEE FOR THE
BENEFIT OF THE BONDHOLDERS OF
FIRST BAPTIST CHURCH OF
STERLING,

      Plaintiff,

v.

FIRST BAPTIST CHURCH OF
STERLING, INC., *et al.*,

      Defendants.

2:24-CV-246-Z-BR

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Herring Bank's Request for Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Motion"), filed February 11, 2026. ECF No. 72. Defendants responded on March 2, 2026. ECF No. 73. Herring Bank replied on March 16, 2026. ECF No. 74. The Motion is now ripe. For the following reasons, the Court **GRANTS** the Motion.

### BACKGROUND

The Court recounted the facts of this case in its February 6, 2025 Memorandum Opinion and Order granting several defendants' motion to dismiss for lack of personal jurisdiction.[1] *See* ECF No. 30 at 1–3. In short, First Baptist Church of Sterling, Inc. ("FBC Sterling, Inc.") was created in 2004 "for the purpose of holding title" to property belonging to First Baptist Church of Sterling, Virginia ("FBC Sterling") after the passage of Virginia Code

---

[1] Herring Bank later moved for leave to file an amended complaint addressing "the inadequacies identified by the Court" in the February 6, 2025 Order. ECF No. 32 at 2. The Court granted leave on April 7, 2025. ECF No. 40. Herring Bank's Second Amended Complaint realleges claims against the defendants the Court dismissed, bringing them back into the case. ECF No. 41.

57-15, which allows "Virginia churches to form a corporation to hold title to church property." *Id.* at 1–2, 2 n.1. FBC Sterling never transferred any property to FBC Sterling, Inc. *See id.* at 2.

In 2007, FBC Sterling, Inc. filed for bankruptcy. "To finance its debt, FBC Sterling, Inc. executed a Trust Indenture ('Indenture') with Plaintiff Herring Bank." ECF No. 30 at 2 (citing ECF No. 11 at 2–3). "Pursuant to the Indenture, FBC Sterling, Inc. issued First Mortgage Bonds, generating over four million dollars in revenue." *Id.* (citing ECF No. 11 at 3). Payment for these bonds was secured by a Deed of Trust lien on church property supposedly owned by FBC Sterling, Inc. *Id.* "The Indenture named Herring Bank as Trustee for the bondholders," many of whom were FBC Sterling church members. *Id.*

The Indenture required FBC Sterling, Inc. "to make periodic payments to Plaintiff to cover regular bond payments and other costs." ECF No. 30 at 2 (citing ECF No. 11 at 4). The Indenture also contained an acceleration clause that allowed Herring Bank to require full payment if FBC Sterling, Inc. defaulted on its installments, which FBC Sterling, Inc. soon did. *Id.* at 2–3. Herring Bank moved to foreclose on the church property that FBC Sterling, Inc. purportedly owned; FBC Sterling, Inc. then revealed that it didn't own any church property.[2] *Id.* at 3. Herring Bank then filed this lawsuit in the 320th District Court of Potter County, Texas, bringing claims for breach of contract, unjust enrichment, money had and received, and fraudulent inducement. ECF No. 1-1. The defendants timely removed to this Court. ECF No. 1.

## LEGAL STANDARD

Rule 41(a)(2) permits a court to dismiss an action at the plaintiff's request on terms that the court considers proper if Rule 41(a)(1) does not apply. *See* FED. R. CIV. P. 41(a)(2).

---

[2] "This foreclosure action is the subject of a pending lawsuit in Virginia." ECF No. 30 at 3.

Rule 41(a)(2) motions "should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002) (citing *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990)). If there is no evidence the defendant will suffer plain legal prejudice, the court should grant the motion. *See id.* "Courts have found legal prejudice, for example, when granting a motion for voluntary dismissal would strip the nonmovant of an otherwise available defense" or "when the plaintiff waits until a late stage in the litigation, after the defendant has already expended significant resources" to move for dismissal. *Rsch. in Motion Ltd. v. Visto Corp.*, 457 F. Supp. 2d 708, 715 (N.D. Tex. 2006) (Fitzwater, J.). However, if "a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." FED. R. CIV. P. 41(a)(2).

ANALYSIS

Plaintiff asks the Court to dismiss its claims without prejudice "so that the related Virginia lawsuit can reach a final judgment." ECF No. 72 at 1. As Plaintiff notes, this case involves issues of Virginia law, and the related foreclosure action is currently on appeal in Virginia. The two cases ask distinct questions, but several issues "are relevant to both lawsuits." *Id.* at 2. Plaintiff accordingly wishes to "avoid a scenario where an adverse ruling in this matter" could have claim-preclusive effect on the ongoing Virginia litigation. *Id.* at 1.

I. Independent Adjudication of Defendants' Counterclaim

Defendants argue that the independent-adjudication principle, and a related principle embodied in Rule 13, require the Court to deny Plaintiff's Motion. Defendants' Response quotes Rule 41's requirement that a case involving a counterclaim may be dismissed over the defendant's objection "only if the counterclaim can remain pending for independent adjudication." ECF No. 73 at 9 (quoting FED R. CIV. P. 41(a)(2)). Defendants argue this

3

provision means "an 'independent adjudication' is one that can proceed without requiring adjudication of the dismissed claim.'" *Id.* at 10. "Because Defendants' counterclaim is compulsory," they argue, "it is not 'independent' of Plaintiff's claims within the meaning of Rule 41(a)(2)." *Id.*

This misreads Rule 41. A counterclaim that can be independently adjudicated is simply one for which "an independent jurisdictional ground exists." *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 322 (5th Cir. 2023) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 355 (5th Cir. 2004) (per curiam)). Contrary to Defendants' reading of Rule 41, it is irrelevant whether the counterclaim is compulsory or permissive. In fact, the Fifth Circuit has stated just the opposite: District courts violate Rule 41's independent-adjudication requirement only when they grant a Rule 41(a)(2) motion "without making provision for pending compulsory counterclaims." *Underwriters at Int. on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 484 (5th Cir. 1996). This means a court errs when it fails to leave counterclaims, compulsory or otherwise, in place for independent adjudication—not by simply granting a Rule 41(a)(2) motion when a compulsory counterclaim is pending.

Here, the Court has diversity jurisdiction over Defendants' counterclaim. *See* ECF No. 21 at 5 (noting that "the amount in controversy exceeds $75,000.00" and FBC Sterling, Inc. is "a Virginia corporation" while Plaintiff Herring Bank has "its principal office in Potter County[,]" Texas); 28 U.S.C. § 1332. This means the counterclaim is one the Court can independently adjudicate.

Defendants' argument sounds more in Rule 13 than Rule 41. Their Response cites *Southern Construction Company v. Pickard* for the idea that "claims arising from the same transaction must be resolved together to avoid fragmented adjudication and inconsistent

results." ECF No. 73 at 10 (citing 371 U.S. 57, 60 (1962)). But that case, and Rule 13, address only whether a defendant must bring a cause of action as a counterclaim instead of suing the plaintiff in a separate lawsuit. *See Pickard*, 371 U.S. at 60 ("The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint."). Rule 13 says nothing about whether a plaintiff may later move to dismiss its own claims under Rule 41 despite the pendency of a compulsory counterclaim. Neither does Rule 41. Rule 41 requires only that the counterclaim, compulsory or otherwise, be susceptible to independent adjudication after the dismissal. Defendants' counterclaim is.

## II. Plain Legal Prejudice

### A. Timeliness of Herring Bank's Motion

Defendants also argue that they will suffer plain legal prejudice if the Court allows Herring Bank to dismiss its claims. They will not. "[M]otions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor*, 279 F.3d at 317. As noted above, "[c]ourts have found legal prejudice" when "granting a motion for voluntary dismissal would strip the nonmovant of an otherwise available defense" or "when the plaintiff waits until a late stage in the litigation, after the defendant has already expended significant resources" to move for dismissal. *Rsch. in Motion*, 457 F. Supp. 2d at 715.

Defendants contend that they will suffer plain legal prejudice because Herring Bank moved to dismiss its claims too late in this litigation. For support, Defendants cite a four-factor test they say the Fifth Circuit uses to "determine whether the non-movant will suffer plain legal prejudice." ECF No. 73 at 3 (citing *Elbaor*, 279 F.3d at 317 n.3). Those factors are:

> (1) the defendant's effort and the expense involved in preparing for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation of the need to take a dismissal; and (4) the fact that a motion for summary judgment has been filed by the defendant.

*Elbaor*, 279 F.3d at 317 n.3 (quoting *Witzman v. Gross*, 148 F.3d 988, 992 (8th Cir. 1998)).

However, this test originates in an Eight Circuit opinion that uses those factors to "determine[e] whether a district court abused its discretion in *denying* a Rule 41(a)(2) motion." *Witzman*, 148 F.3d at 992 (emphasis added). The *Witzman* factors are not, as Defendants contend, the test district courts in the Fifth Circuit must apply to decide whether to *grant* a Rule 41(a)(2) motion.

Notwithstanding the fact that these factors do not appear to be binding,[3] many district courts in the Fifth Circuit—particularly in the Eastern District of Texas—apply them anyway. *See, e.g., Marcantel v. El Paso Prod. Oil & Gas Co.*, No. 1:05-CV-527, 2005 WL 8161070, at *1 (E.D. Tex. Sept. 30, 2005) (citing *Elbaor*, 279 F.3d at 317 n.3); *Blackshare v. Specialized Loan Servicing, LLC*, No. 4:17-CV-564, 2018 WL 3078782, at *2 (E.D. Tex. Mar. 29, 2018), *report and recommendation adopted*, No. 4:17-CV-564, 2018 WL 3064931 (E.D. Tex. June 21, 2018); *Lucero v. Gen. Motors LLC*, No. 4:21-CV-2893, 2022 WL 16577308, at *2 (S.D. Tex. Nov. 1, 2022). No court in the Northern District of Texas appears to have applied these factors before.

Even assuming this test applies, the *Witzman* factors do not prevent the Court from granting Herring Bank's Motion. Again, the default is that Rule 41(a)(2) motions "should be freely granted unless the non-moving party will suffer some plain legal prejudice." *Elbaor*, 279 F.3d at 317. And under *Witzman*, courts should depart from this default rule only if its four-factor test favors denying the motion.

---

[3] The Fifth Circuit does not appear to have cited these factors again since *Elbaor*, decided in 2002.

At first glance, the fourth factor seems to favor Defendants because they filed a motion for summary judgment on August 29, 2025. ECF No. 45. However, the Court mooted that motion and another motion on December 16, 2025, after the parties indicated that they would "seek to resolve their dispute through mediation." ECF No. 70 at 1 (denying as moot ECF Nos. 42 and 45 but granting Defendants leave to reurge those motions "at any time"). It follows that this factor is at most neutral for Defendants, because although they did file a motion for summary judgment, the Court mooted that motion in December 2025.

The other three factors weigh in favor of granting Herring Bank's Motion. As Herring Bank notes, the "significant motion practice" Defendants say they have undertaken amounts to just five filings. ECF No. 74 at 3–4. Two of these were related to scheduling, while another was a short response to Herring Bank's motion to extend the discovery deadline. *See id.* at 3. Very little discovery has taken place—as of the date Herring Bank filed this Motion, Defendants had not "serve[d] any discovery requests on Plaintiff, no depositions ha[d] been taken in this case, no subpoenas ha[d] been served, and Defendant[s] only produced 20 Bates-labeled documents in discovery."[4] ECF No. 72 at 2–3.

This case has also been pending for roughly eighteen months, and other courts routinely grant Rule 41(a)(2) motions in cases that have been pending for *much longer*—and where the parties have expended significantly more resources. *See, e.g., Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*, No. 1:19-CV-696, 2023 WL 7783097, at *4 (W.D. Tex. Nov. 15, 2023) (granting a Rule 41(a)(2) motion in a case that had been "ongoing for four years," despite the fact that "both sides ha[d] expended significant resources" litigating a jury trial and even an appeal). Further, as Herring Bank argues, because Defendants are pursuing a

---

[4] At 11:45 p.m. on February 11, 2026, about eight hours after Herring Bank filed its motion, Defendants served a "combined written discovery request," their first major discovery action in this case.

counterclaim for breach of contract, they would likely have filed these motions anyway. These motions will continue to be relevant after the dismissal of Herring Bank's claims because the Court will, as it must, leave the counterclaim pending for independent adjudication. So Defendants' limited "effort and expense involved in preparing for trial" will not go to waste if the Court grants Herring Bank's Motion. *Elbaor*, 279 F.3d at 317 n.3 (citation modified).

The second and third factors also favor granting the Motion. Herring Bank has not "excessively delayed" or "lacked diligence" in prosecuting this case. *Elbaor*, 279 F.3d at 317 n.3 (citation modified). To the contrary, it has diligently pursued its claims both in this litigation and the related Virginia case. And it has not given the Court an "insufficient explanation of [its] need to take a dismissal." *Id.* Instead, Herring Bank described in detail how "an adverse ruling in this matter would provide a basis for a collateral estoppel argument in the Virginia lawsuit" and directed the Court to several relevant Virginia statutes and cases. ECF No. 72 at 2. Thus, even assuming the *Witzman* factors apply, they do not bar the Court from granting Herring Bank's Motion.

### B. Defendants' Statute of Limitations Defense

Defendants' final argument is that the Court must deny Herring Bank's Motion, or at least dismiss Herring Bank's breach of contract and attorney's fees claims with prejudice, because otherwise Defendants may lose the right to assert a statute of limitations defense in a subsequent proceeding. This, they argue, would constitute plain legal prejudice. The thrust of Defendants' argument is that Herring Bank's breach of contract claim accrued on May 5, 2020, when it notified Defendants that it intended to accelerate the debt. *See* ECF No. 73 at 7–8. Because we are now outside Texas law's four-year statute of limitations for breach of contract claims, Defendants continue, they may not be able to assert a statute of limitations defense if Herring Bank brings another suit in the future.

8

Under Texas law, if "a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). "Rather, the action accrues only when the holder actually exercises its option to accelerate." *Id.* But even after "a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Id.* at 566–67. Abandonment undoes acceleration, "effectively restoring the note's original maturity date." *Id.* at 567. The limitations period then starts over, too. *See Moore v. Wells Fargo Bank, N.A. as trustee for MASTR Asset Backed Sec. Tr. 2004-OPT2, Mortg. Pass-Through Certificates*, 685 S.W.3d 843, 846 (Tex. 2024) ("A lender may abandon or rescind acceleration of the note, restore the original maturity date, and reset the limitations period . . . .").

Here, Defendants argue that Herring Bank never abandoned the May 2020 acceleration. But it plainly did. "Within three weeks of the acceleration notice, on May 7, 14, and 21 of 2020, Herring Bank accepted three payments of $7,982.94 from" Defendants. ECF No. 74 at 7. Herring Bank took no further action to "exact[] any remedies available to it upon declared maturity." *Holy Cross Church*, 44 S.W.3d at 567. Herring Bank thus abandoned the May 2020 acceleration as a matter of Texas law.

Herring Bank says as much in its Reply. *See* ECF No. 74 at 7 ("Herring Bank abandoned its May 5, 2020 acceleration as a matter of law."). And in any future legal proceeding, Herring Bank will be judicially estopped from claiming otherwise. *See Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638 (5th Cir. 2024) ("Judicial estoppel 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" (quoting *Ergo Sci., Inc.*

9

*v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996))); *id.* ("Two elements must be present for judicial estoppel to apply: (1) the position of the party being estopped must be 'clearly inconsistent with its previous position'; and (2) 'that party must have convinced the court to accept that previous position.'" (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citation modified))). This means Defendants will be able to raise this defense again, and Herring Bank will be estopped from arguing that it did not abandon the May 2020 acceleration in future litigation. Thus, Defendants will not suffer any prejudice from the Court granting Herring Bank's Motion.[5]

### CONCLUSION

The Court **GRANTS** Herring Bank's Motion. Herring Bank's claims are **DISMISSED** without prejudice to refiling. The Clerk of the Court is **DIRECTED** to leave Defendants' counterclaim (ECF No. 21 at 5–8) pending for independent adjudication.

**SO ORDERED**.

April 17, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[5] Defendants also claim that *Elbaor* held that "even the potential loss of a statute of limitations defense constitutes" plain legal prejudice and so "precludes dismissal." ECF No. 73 at 8. That is not what *Elbaor* said. Instead, the *Elbaor* court held that a Rule 41(a)(2) dismissal that clearly denied the defendant of a "potentially viable" defense prejudiced the defendant—*not* that the loss of any defense a defendant might wish to raise in a future action constitutes plain legal prejudice. Here, however, there is no "potential loss" of Defendants' statute of limitations defense. Defendants clearly will be able to raise limitations in any future case, so they will suffer no prejudice from allowing Herring Bank to dismiss its claims now.